**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Case No. 19-36767 (DRJ)** |
| **NEWSCO INTERNATIONAL** | § | |
| **ENERGY SERVICES USA INC.,** | § | **Chapter 11** |
| | § | |
| **Debtor.** | § | |
| | § | |
| | § | |
| **NEWSCO INTERNATIONAL** | § | |
| **ENERGY SERVICES USA INC.,** | § | |
| | § | |
| **Plaintiff** | § | **Adversary No. _____.** |
| | § | |
| **vs.** | § | |
| | § | |
| **NATHAN LARUE and SKYLINE** | § | |
| **DIRECTIONAL DRILLING, LLC,** | § | |
| | § | |
| **Defendants** | | |

**PLAINTIFF'S ADVERSARY COMPLAINT AND**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER,**
**PRELIMINARY INJUNCTION AND PERMANENT INJUNCTION**

Newco International Energy Services USA Inc. (hereinafter "Plaintiff" or "Newsco") files this its Plaintiff's Adversary Complaint and Application for Temporary Restraining Order, Preliminary Injunction and Permanent Injunction against Defendants Nathan LaRue ("LaRue") and Skyline Directional Drilling, LLC ("Skyline", and with LarRue, the "Defendants") and hereby alleges and states as follows:

**I.**
**PRELIMINARY STATEMENT**

1.      Plaintiff brings claims against the Defendants for continuing violations of the automatic stay, for turnover of property of the estate, for avoidance of fraudulent transfers, and for injunctive relief to prevent the Defendants from causing further irreparable injury to the Plaintiff

with no adequate remedy at law. Without the requested relief, the Defendants' actions will continue to cause a direct and substantial loss to Plaintiff's cash flow, and further will significantly impede Plaintiff's efforts to successfully reorganize in its Chapter 11 bankruptcy case.

## II.
## JURISDICTION AND VENUE

2.      On December 4, 2019, Plaintiff filed its voluntary petition for relief under chapter 11 of Title 11 of the United States Code, thereby initiating its case (the "Bankruptcy Case").

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

4.      This is an adversary proceeding under Rule 7001(1), (7), and (9) of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"). The predicate for relief being requested herein is found in §§ 362 and 542.

## III.
## PARTIES

5.      Plaintiff Newsco International Energy Services USA Inc., is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 12029 Brittmoore Park Drive, Houston, Texas 77401.

6.      Defendant Nathan LaRue is an individual citizen of the State of Texas, upon information and belief, residing at 755 W. Valley Terrace Circle, Burleson, Texas 76028. Defendant LaRue is domiciled in Johnson County, Texas.  LaRue may be served with process at that address.

7.      Defendant Skyline Directional Drilling, LLC is a limited liability company, upon information and belief its principal place of business is located at 2524 S Ann Arbor, Oklahoma

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

City, OK 73128.  Defendant Skyline may be served with process by serving its Registered Agent,

Eric Minchew at 15000 Mansions View Drive, Apt. 1702, Conroe, Texas 77384.

## IV.
## EVIDENCE

8.      In support of the Adversary Complaint and Application for Temporary Restraining

Order, Preliminary Injunction and Permanent Injunction, Plaintiff submits the following evidence:

| Ex. | Description |
|-----|-------------|
| A | Declaration of William Melville |
| B | Employment Agreement of Nathan LaRue |
| C | Emails of Nathan LaRue regarding Newsco's confidential information. |
| D | Cease and Desist Correspondence |

## V.
## FACTUAL BACKGROUND

9.      Newsco is an international company that provides directional drilling and

measurement while drilling ("MWD") services to the oil, gas and energy industry.  *See* Ex. A.

Newsco has operations across the United States and internationally.  *See* Ex. A.  Newsco is

recognized for its quality tools, committed service and for providing customized innovative

solutions to clients through its in-house research and development.  *See* Ex. A.  When contracted

with a client, Newsco provides trained and capable staff on well-sites to perform directional

drilling and MWD services.  *See* Ex. A.  Skyline, based on its website, provides directly

competitive directional drilling services to the oil, gas and energy industry.

10.     On or about April 6, 2016, Newsco hired LaRue as an Account Manager, Mid-

Continent Region, reporting to the Country Manager, USA.  *See* Exs. A and B.  During his

employment, LaRue's title changed to US Account Manager.  *See* Ex. A.  In his position, LaRue

was in a traditional sale role for Newsco; his responsibilities included developing relationships and contacts with energy industry clients to develop work and sales for Newsco.  *See* Ex. A.  During his employment, he provided these services to clients throughout the United States and specifically focused on clients in Texas.  *See* Ex. A. Further, during his employment, LaRue worked out of his home residence located in Johnson County, Texas.  *See* Ex. A.

11.     At the time of his hiring, Newsco required LaRue to execute the Employment Agreement, that incorporated Addendum A and B, which LaRue also signed.  *See* Ex. B.  The Employment Agreement specifically made LaRue's employment contingent upon his execution of a Non-Disclosure and Noncompete Agreement – Addendum A.  *See* Ex. B.  In the Employment Agreement, as consideration for LaRue's promises and agreements Newsco agreed to provide LaRue confidential information of Newsco as well as provide LaRue access to Newsco's customers and clients.  *See* Ex. B.  The confidential information would not have been provided to LaRue absent his execution of the Employment Agreement and promises to abide by the restrictive covenants contained therein and in Addendum A.  *See* Ex. B.  The confidential information provided to LaRue included: (1) software and technology developed by Newsco, and any research data, notes or other documents related to the development of Newsco's software and technology; (2) information regarding Newsco's clients, including client contracts, client contacts, client requirements and needs, client bids, and client pricing and client financial information; (3) information regarding Newsco's business, including marketing strategies and plans, product information, pricing and pricing strategies, business plans, bidding information, sales information, and other financial information; and, (4) client lists and prospective client lists.  ("Confidential Information") *See* Ex. B.  LaRue acknowledged that such Confidential Information provided

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

Newsco a competitive advantage and if such information was disclosed Newsco would be irreparably harmed.  *See* Ex. B.

12.     In response to Newsco's promises to provide LaRue such Confidential Information, LaRue agreed to the following:

      a.     LaRue promised to hold all Confidential Information in trust and he would not: (1) use the information for any purpose other then the benefit of Newsco; and (2) disclose to any person or entity the Confidential Information of Newsco, except as needed to benefit Newsco.

      b.     Upon his termination, LaRue agreed to immediately deliver all Confidential Information to Newsco and to not retain any of said Confidential Information.

*See* Ex. B.

13.     In accordance with the enforceable non-disclosure agreement, LaRue agreed to the following restrictive covenants for both during his employment, and for a period of one (1) year following his separation:

      a.     LaRue agreed to not engage in or perform services for a competing business within the restricted area.  Competing business is defined as one which provides directional drilling services and/or MWD services.  The restricted area is the territory, state or province in which LaRue performed services for Newsco.

      b.     LaRue would not solicit business from, attempt to conduct business with, or do business with any clients/customer of Newsco which LaRue: (1) called on, serviced or did business with or had contact with during LaRue's employment; or, (2) became acquainted with as a result of LaRue's employment.

      c.     LaRue would not solicit, induce or attempt to solicit or induce, on behalf of himself or any entity, any employee of Newsco to terminate their employment with Newsco.

("Restrictive Covenants") *See* Ex. B.  LaRue agreed that the Restrictive Covenants were reasonable and necessary to protect the legitimate business interests of Newsco.  *See* Ex. B.

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

Further, the Restrictive Covenants included a tolling provision during any time period LaRue is in violation of the Restrictive Covenants.  *See* Ex. B.

14.     Throughout LaRue's employment, Newsco invested considerable time, effort and financial resources to assist LaRue in developing new business and clients for Newsco.  *See* Ex. A.  During this time period, due to Newsco's efforts and resources Newsco began doing business with Devon Energy and XTO, both prominent clients in the energy industry.  *See* Ex. A.  LaRue through his position was involved in bidding work, marketing strategies and price strategies to develop these two clients among others.  *See* Ex.  A.

15.     In late October 2019, LaRue approached Newsco's upper management and asked to be released from the Restrictive Covenants.  *See* Ex. A.  Billy Melville and Corey Campbell discussed revising the Restrictive Covenants, but not releasing all of them.  *See* Ex. A.  Newsco, in fact, drafted an amended agreement and forwarded it to LaRue to review, however, LaRue never responded and the parties never finalized any agreement to revise the original Restrictive Covenants.  *See* Ex. A.  Therefore, the original terms of the Employment Agreement and Restrictive Covenants stand.  Of note, even under the amended agreement, LaRue maintained the non-disclosure of Confidential Information provision, and the non-solicitation of clients, contacts and employees.

16.     On or about November 15, 2019, two Newsco clients informed it that on their rigs they would not be continuing to work or use Newsco to provide services, but instead transitioned this work to Skyline.  *See* Ex. A.  The work transitioned included Devon Energy's rigs 168 and 129 and a rig for XTO.  *See* Ex. A.  The revenue associated with transitioning three rigs is significant in both terms of revenue and profit for Newsco.  *See* Ex. A.

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

17.     On November 17, 2019, LaRue submitted his resignation.  *See* Ex. A.  Following his resignation, LaRue went to work for Skyline in a directly competitive sales position.  *See* Ex. A.  Indeed, LaRue, on his Linkedin profile, represents that he has been with Skyline since November 2019 and is employed as its Director of Business Development.

18.     On December 4, 2019, Newsco's Bankruptcy Case was filed.

19.     Following LaRue's resignation, Newsco became aware that LaRue was primarily managing the Devon Energy and XTO accounts for Skyline that were moved from Newsco prior to his resignation.  *See* Ex. A.  Further, Newsco became aware that LaRue was soliciting work from and communicating with Charger Drilling Services, another client of Newsco.  *See* Ex. A.

20.     On December 12, 2019, Clark Hill counsel forwarded a cease and desist letter to LaRue and Skyline.  Skyline did not respond; however, on December 18, 2019, LaRue's counsel, Jacqueline Armstrong, responded on his behalf.  Ms. Armstrong was away from her office and asked that no further action be taken until she returned on January 3, 2020.  Clark Hill counsel agreed no further action would be taken until they conferred, as long as LaRue would confirm in writing he will not solicit any clients or contacts of Newsco and will not further solicit any work from Devon Energy and XTO.  Ms. Armstrong confirmed that LaRue would will not be working through January 3 and her understating is he would not be soliciting any Newsco clients as requested.  On January 3, 2020, when she returned to her office, Ms. Armstrong advised Clark Hill counsel that she no longer represented LaRue.

21.     On January 3, 2020, Clark Hill counsel then contacted LaRue and indicated that Newsco would need his written confirmations that he would not solicit any clients or contacts of Newsco, would not further solicit work from Devon Energy and XTO, and would act in accordance

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

with the Restrictive Covenants.  Counsel requested that LaRue respond by Monday, January 6, 2020.  No response was received.

22.     Subsequent to this communication with LaRue, upon information and belief, Newsco discovered that LaRue was: (1) actively recruiting several employees to leave Newsco and work for Skyline, including rig workers crucial to the directional drilling process; (2) using Newsco's pricing information and bid templates to pitch work to multiple Newsco clients;  and (3) submitting bids to XTO and EOG using Newsco's pricing structure and company marketing information.  *See* Ex. A.

23.     Newsco also discovered the following emails from LaRue's work Newsco email account to his personal email account.  It is undeniable, while still an employee, LaRue was actively working and competing against Newsco and disclosing and misappropriating its Confidential Information.  The emails discovered show:

- Email from LaRue to nlarue@sbcglobal.net on October 23, 2019 at 7:23 AM with an attachment containing a PowerPoint performance and incident review of Newsco's MWD.

- Email sent from LaRue to nlarue@sbcglobal.net on October 29, 2019 at 12:11 AM with an attachment containing an invoice, field ticket, and pricing proposal from Newsco to Charger Drilling LLC.

- Email sent from Larue to nlarue@sbcglobal.net on October 29, 2019 at 12:22 AM with an attachment containing an invoice and field ticket to Devon Energy as well as a contract entitled Commercial Terms including detailed pricing and requirements under the contract.

- Email sent from LaRue to nlarue@sbcglobal.net on October 30, 2019 at 10:36 AM with an attachment containing Newsco's Bidding Template.

- Email sent from LaRue to nlarue@sbcglobal.net on October 30, 2019 at 11:59 AM with an attachment containing an Excel spreadsheet with all of Newsco's overdue sales invoices as of October 30, 2019.

- Email from LaRue to nlarue@sbcglobal.net on November 4, 2019 at 11:02 AM attaching 71 attachments such as: commission statements paid to LaRue (these "Sales Commission Acknowledgements" contain the name of each customer, the invoice date, and net revenue Newsco received from the invoice), Master Service Agreements between Newsco and various

companies including, (1) Catamount Energy Partners LLC, (2) Roan Resources LLC, and (3) Gordy Oil Company. Also, attached to the emails were W-9s for Catamount Energy Partners LLC, Newsco, and Telemtrix USA Inc., and a certificate of liability insurance for Newsco and Catamount Energy Partners LLC.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 6, 2019 at 11:33 AM with an attachment containing Newsco's Final Bidding Template.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 12, 2019 at 9:41 AM with an attachment containing Newsco's Pricing Template.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:06 PM with an attachment containing a field ticket from Devon Energy.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:07 PM with an attachment containing a field ticket from XTO Energy.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:08 PM with an attachment containing a field ticket from XTO Energy.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:08 and 7:09 PM with an attachment containing a field ticket to Charger Services.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:11 PM with an attachment containing a field ticket from Devon Energy.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:12 PM with an attachment containing a field ticket from XTO Energy.

- Email sent from LaRue to [nlarue@sbcglobal.net](mailto:nlarue@sbcglobal.net) on November 17, 2019 at 7:12 PM with an attachment containing a field ticket from XTO Energy.

*See* Ex. C.  These emails contained Newsco's Confidential Information, including, information about clients, clients' invoicing, clients' pricing, marketing strategies, company templates, company contracts, company master service agreements, and other valuable Confidential Information.  Such emails undoubtedly show an employee taking the Confidential Information of his employer, to improperly compete, illegally solicit and violate all said Restrictive Covenants.

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

## VI.
## CAUSES OF ACTION

**Count I: Violation of the Automatic Stay Pursuant to 11 U.S.C. § 362(a) - Defendants**

24.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

25.     Section 362(a)(3) provides that a bankruptcy petition operates as a stay of "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

26.     It is without doubt that the Confidential Information is property of the estate and extremely valuable to the Debtor's operations.  The technology, data, client lists, pricing, and other information were developed and owned by the Debtor, as acknowledged by LaRue.  LaRue provided Skyline with the Confidential Information.  Upon information and belief, the Defendants continue to use the Confidential Information, which is a willful violation of the automatic stay. These violations continue despite the cease and desist communications sent to the Defendants.

27.     The Defendants continued possession and use of property of the estate subjects them to damages, sanctions, and attorneys' fees necessary to enforce the automatic stay.   Plaintiff requests that the Court award damages, sanctions, and attorneys' fees for the continued violations of the automatic stay.

**Count II: Turnover Pursuant to 11 U.S.C. § 542 – Skyline**

28.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

29.     Section 541 states that property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case" and "any interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(1), (7).

30.     Section 542(b) of the Bankruptcy Code requires that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee [or debtor-in-possession], and account for, such property or the value of such property . . . ."

31.     Skyline as the entity should be compelled to immediately turnover the Confidential Information in its possession, custody, or control.  The Confidential Information constitutes property of Newsco's bankruptcy estate.  Consequently, Skyline must turn over the Confidential Information pursuant to Section 542 and pay Newsco damages for the loss of use and/or lost profits associated with Skyline's wrongful possession and use of the Confidential Information.

## Count III – Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. § 548 - Defendants

32.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

33.     Pursuant to Section 548(a)(1)(B) of the Bankruptcy Code, a debtor may avoid any transfer of an interest of the debtor in property (i) that was made or incurred on our within two years before the date of the filing of the petition, (ii) if the debtor received less than reasonably equivalent value in exchange for such transfer or obligation, and (iii) was insolvent on the date that such transfer was made or became insolvent as a result of such transfer or obligation.

34.     As stated above, the Confidential Information is property of the Plaintiff, and was transferred from the Debtor to Defendants without authority.  The transfers occurred beginning in October 2019, less than sixty (60) days before the Bankruptcy Case.  The Plaintiff received no reasonably equivalent value for the transfers of the Confidential Information as the transfers were unauthorized and no consideration was given by the Defendants.  Finally, given that the transfers occurred near the time of the Bankruptcy Case, such transfers are constructively fraudulent

because they occurred when the Plaintiff was insolvent, undercapitalized, or unable to pay its debts when they became due.

## Count IV: Recovery of Avoided Transfers Pursuant to 11 U.S.C. § 550 – Defendants

35.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

36.     Section 550 of the Bankruptcy Code allows the debtor to recover, for the benefit of the estate, the property transferred and avoided under Section 548 from the initial transferee of such transfer or the entity for whose benefit such transfer was made.  11 U.S.C. § 550(a).

37.     Plaintiff is entitled to avoid the transfer of the Confidential Information.  LaRue was the initial transferee of the Confidential Information, and Skyline was the subsequent transferee.  Defendants were the beneficiaries of the transfers.  Accordingly, Plaintiff is entitled to recover the Confidential Information and any other assets transferred by and/or to the Defendants.

## Count V: Breach of Fiduciary Duties – LaRue

38.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

39.     From September 30, 2016 to the date of his resignation, LaRue was an at-will employee of Newsco.  During said employment, LaRue owed a fiduciary duty and a duty of loyalty to his employer and is obligated to act in his employer's interests.  Further, after termination, an employee has an obligation not to divulge their employer's confidential information to their former employer's detriment.

40.     LaRue owed a fiduciary duty and duty of loyalty to Newsco during his employment.

41.     An employee violates his duty of loyalty to his employer if he attempts to: (1) appropriate his employer's confidential information and trade secrets; (2) solicit his employer's customers while still working for his employer; (3) remove or carry away certain confidential

12

information and trade secrets, such as lists of customers; and (4) act for his future interests at the expense of his employer by using the employer's resources for personal gain and/or for the gain of his employer's competitor or by any other course of conduct designed to hurt the employer.

42.     Based on facts known to date, LaRue undoubtedly breached his duty of loyalty and his fiduciary duty when he: (1) misappropriated Newsco's Confidential Information, including client invoices, client lists, pricing information, marketing and pricing strategies, accounts receivable reports, client contracts, company contracts and the other Confidential Information he took from Newsco while employed; (2) upon information and belief, solicited Newsco's customers on behalf of himself and/or Skyline for his own gain while still working for Newsco; (3) misappropriated Newsco's confidential customer reports, invoices, contracts and pricing information for his benefit and/or the benefit of Skyline; and (4) acted for his future interests and/or Skyline's future interests at the expense of Newsco by using Newsco's information, time, resources, and/or funds for personal gain or by a course of conduct designed to hurt Newsco.

43.     These acts are the proximate and/or producing cause of significant damage to Newsco.  Newsco has and will continue to incur actual damages, including lost revenue and lost business goodwill as a result of LaRue's wrongful conduct.  Indeed, upon information and belief, LaRue's breaches of his fiduciary duty owed has resulted in two Newsco clients moving a total of 3 rigs to LaRue's new employer while LaRue was an employee of Newsco.  Moreover, to the extent that LaRue's acts were committed with malice or fraud, Newsco is entitled to recover exemplary damages.

**Count VI: Breach of Contract – LaRue**

44.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

45.     Newsco also asserts a claim against LaRue for breach of his Employment Agreement and Restrictive Covenants.   LaRue entered into a valid and enforceable written contract as discussed above and attached as Exhibit B.

46.     LaRue agreed to the following contractual terms which he has violated: (1) non-disclosure of Newsco's Confidential Information; (2) a reasonable non-compete term; (3) a non-solicitation of clients and customers provision; and, (4) a non-solicitation of employees provision.

47.     The Employment Agreement and its Restrictive Covenants, specifically the non-compete and non-solicitation provisions, are reasonable in time, geographic area, and the scope of activity restrained. Further, the covenants do not impose a restraint greater than necessary to protect Newsco's legitimate business interest.

48.     LaRue continues to be bound by the Employment Agreement and Restrictive Covenants.

49.     Newsco fulfilled its obligations in accordance with the enforceability of the Restrictive Covenants by providing LaRue Confidential Information.

50.     LaRue's actions, and subsequent employment for Skyline, are in direct violation of the non-disclosure of Confidential Information provision and non-compete provision.  Further, upon information and belief, he has also directly violated the non-solicitation of employees and non-solicitation of clients and customer provision.

51.     LaRue's breach of his respective contractual provisions have caused Newsco to suffer substantial, actual, consequential, and special losses in an amount which is in excess of the minimum jurisdictional limits of this Court, including lost profits, business opportunities, and economic disadvantages.  Further, Newsco has been required to employ the services of legal

counsel to prosecute this action.  Newsco is thus entitled to an award of its reasonable attorneys' fees incurred in the prosecution of this action.

52.      Additionally, as a result of these breaches, Newsco is and will continue to suffer damages in an amount which is difficult to ascertain.  Accordingly, Newsco is suffering irreparable injury for which there is no adequate remedy at law.  Such harm will continue to be sustained unless LaRue is enjoined from continuing to breach his contractual obligations by order of this Court.

53.      To the extent applicable, all conditions precedent have been performed or have occurred.

## Count VII: Misappropriation of Trade Secrets under the Texas Uniform Trade Secrets Act - LaRue and Skyline

54.      The allegations contained in the preceding paragraphs are all incorporated herein by reference.

55.      Newsco developed and owns certain proprietary information and trade secrets, which it maintains as Confidential Information.  Newsco derives both actual and potential economic value from this Confidential Information, and such Confidential Information is not generally known to and not readily ascertainable by other persons.

56.      As set forth above, Newsco has made reasonable efforts to protect and maintain the secrecy of its Confidential Information such as requiring employees to sign agreements preserving and protecting the Confidential Information.  *See* Ex. B.  Newsco has never given consent, express or implied, for its Confidential Information to be disclosed, or for LaRue to disclose such information.

57.      LaRue acquired Newsco's Confidential Information in the course of his employment with Newsco, which included access and information regarding Newsco's clients,

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

customer contacts and pricing information.  Moreover, both before and following his separation, LaRue is disclosing and improperly using, for Skyline's benefit, Newsco's Confidential Information.  The improper disclosure of this Confidential Information is being used to directly compete with Newsco and target its clients.  LaRue's misappropriation and improper disclosure of the Confidential Information, for Skyline's use and benefit, is willful and malicious.

58.     As a result of such misappropriations, Newsco is suffering damages in an amount which is difficult to ascertain.  Such damages include, but are not limited to, the loss of customers, loss of goodwill, loss of value of the Confidential Information, and loss of business reputation. Accordingly, Newsco is suffering irreparable injury for which there is no adequate remedy at law. Such harm will continue to be sustained unless Defendants are enjoined by order of this Court.

## Count VIII: Tortious Interference with a Contract - Skyline

59.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

60.     LaRue entered into a valid and enforceable Employment Agreement and Restrictive Covenants with Newsco.  The contractual terms contained specific non-disclosure of Confidential Information, non-solicitation of clients, non-solicitation of employees, and a non-compete provisions regarding LaRue.

61.     Upon information and belief, Skyline was aware and had actual knowledge of the contractual provisions that existed between Newsco and LaRue.

62.     Upon information and belief, both while LaRue was an employee of Newsco and after his separation, Skyline intentionally, and through improper and unfair means, interfered with Newsco's contractual agreement with LaRue by soliciting and inducing LaRue to breach each contractual provision identified above.

63.     Skyline's interference caused Newsco to suffer and continue to suffer damages in the form of lost profits, business opportunities, and economic disadvantages in an amount to be determined at trial.

## Count IX: Unfair Competition by Misappropriation – LaRue and Skyline

64.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

65.     The actions of the Defendants constitute unfair competition prohibited under Texas law. Newsco created its Confidential Information through extensive time, labor, skill, and money.

66.     Defendants have misappropriated Newsco's Confidential Information by surreptitiously using Newsco's Confidential Information for their own financial benefit. Defendants use of Newsco's Confidential Information in direct competition with Newsco has afforded Defendants a special advantage in that competition, which, is essentially a "free ride" because Defendants were burdened with little or none of the expense incurred by Newsco in obtaining the confidential information.

67.     Defendants' actions have resulted in business disruptions, lost profits, lost business opportunity, harm to Newsco's business relationships, and loss of goodwill, among other things. Defendants have intentionally attempted to and are competing with Newsco using unfair methods and practices, which as a proximate result have caused damages to Newsco.

68.     Newsco is suffering damages in an amount which is difficult to ascertain. Accordingly, Newsco is suffering irreparable injury for which there is no adequate remedy at law. Such harm will continue to be sustained unless Defendants are enjoined by order of this Court.

## Count X: Civil Conspiracy - LaRue and Skyline

69.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

70.     Based upon information and belief, Defendants acted together and/or conspired with one another to accomplish an unlawful purpose, namely improperly interfering with Newsco's contractual relationships with LaRue and Newsco's clients, and by improperly disclosing and using Newsco's Confidential Information.

71.     Upon information and belief, Defendants LaRue and Skyline had a meeting of the minds with regard to their conspiracy to interfere with Newsco's contractual relationships and improperly disclose Newsco's Confidential Information.

72.     Skyline committed an unlawful overt act by intentionally interfering with Newsco's contractual relationship with LaRue and Newsco's clients.

73.     LaRue committed an unlawful overt act by improperly disclosing Newsco's Confidential Information and by intentionally interfering with Newsco's contractual relationship with its clients.

74.     Defendants engaged in a conspiracy to commit the aforementioned unlawful acts against Newsco, and thus Defendants are jointly and severally liable for all torts and unlawful acts they committed, as described herein, as a result of the conspiracy. Defendants' conduct was done willfully, intentionally, and with malice. Defendant's conduct was the direct and proximate cause of harm to Newsco. Consequently, Newsco requests actual damages in an amount to be proven at trial, joint and several liability, and exemplary damages.

## **Attorney's Fees**

75.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

76.     Newsco is entitled to recover reasonable and necessary attorney fees under Texas Civil Practice and Remedies Code § 38.001(8) because this is a suit for breach of a contract.

4814-7911-0321.1/J1452/397644/011020
Legal\J1452\397644\4814-7911-0321.v1-1/13/20

**VII.**
**APPLICATION FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY**
**INJUNCTION, AND PERMANENT INJUNCTION PURSUANT TO FEDERAL RULE**
**OF CIVIL PROCEDURE 65**

77.     The allegations contained in the preceding paragraphs are all incorporated herein by reference.

78.     Federal Rule of Civil Procedure 65, made applicable by Federal Rule of Bankruptcy Procedure 7065, provides the Plaintiff with the opportunity to seek injunctive relief against the Debtors.  Federal Rule of Bankruptcy Procedure 7065 provides that no security is required.

79.     As a direct and proximate result of Defendants' conduct described above, Newsco has lost significant, uncertain, and possibly indeterminable amounts of money.  At this time and considering the ongoing nature of Defendants' activities, the total loss to Newsco cannot be accurately measured.  However, unless Defendants are enjoined as requested herein, Newsco will suffer further irreparable harm.  Without the requested relief, the Defendants' actions will continue to cause a direct and substantial loss to Plaintiff's cash flow, and further will significantly impede Plaintiff's efforts to successfully reorganize in its Chapter 11 bankruptcy case.

80.     For the harm and loss suffered by Newsco, and for the harm and loss that will continue but for intervention of the Court, Newsco has no adequate remedy at law.  If Defendants, or anyone acting on their behalf or at their direction are permitted to continue to disclose and improperly use Newsco's Confidential Information to compete against Newsco, violate their contractual obligations owed to Newsco, or solicit and perform work for Newsco's customers, Defendants will have profited by their own wrong, resulting in immeasurable damages to Newsco that are unpredictable, uncertain and unending.  Unless restrained as requested herein, there exists substantial risk that Defendants will be unable to answer in money damages, since one of the Defendants is an individual.

81.     Indeed, LaRue for the benefit of himself and Skyline, has taken Newsco's confidential information and specifically solicited three of Newsco's clients to take the business from Newsco.  LaRue has willfully breached the terms of the Restrictive Covenants and interfered with long-standing customer relationships in an effort to usurp opportunities, disrupt Newsco's operations, and destroy its good will.  Thus, injunctive relief is necessary to preserve Newsco's status and to enable it to pursue its legal rights.

82.     For the reasons stated in this pleading, it is essential that the Court immediately and temporarily restrain Defendants, and anyone acting on their behalf and/or at their direction from the following:

a.      For **LaRue** from being employed by **Skyline Directional Drilling, LLC** (or any affiliate thereof), and from engaging in any other interference with Newsco's business, customers, clients, or employees;

b.      For **LaRue** from either directly or indirectly, on his own behalf or on behalf of **Skyline Directional Drilling, LLC** (or any affiliate thereof), soliciting business from, attempting to conduct business with, or doing business with any Newsco client or customer, LaRue called on, serviced, did business with, or had contact with during his employment with Newsco;

c.      For **LaRue** from either directly or indirectly, on his own behalf or on behalf of **Skyline Directional Drilling, LLC** (or any affiliate thereof), soliciting, inducing or attempting to solicit or induce any of Newsco's employees to terminate their employment with Newsco;

d.      For all **Defendants** from using, maintaining, revealing, copying, or disclosing any of Newsco's confidential information in its actual or constructive possession, whether in paper, electronic, or other format, including any of Newsco's marketing templates, pricing templates, pricing information, contracts, or client lists;

e.      For all **Defendants** from using, destroying, disposing of, disseminating, altering or disclosing any information or property in their possession, custody, or control belonging to Newsco or copied, duplicated, recorded, or otherwise taken from Newsco, including but not limited to information stored on computers, external hard drives, and/or portable storage devices (including but not limited to any flash drives, thumb drives, and USB devices);

f.    For all **Defendants** from using, destroying, disposing of, disseminating, altering or disclosing any document or information that in any way relates to the allegations in this suit, including but not limited to any computers, external hard drives, and/or portable storage devices (including but not limited to any flash drives, thumb drives, and USB devices); and

g.    For all **Defendants** from using, destroying, disposing of, disseminating, altering or disclosing any documents or information that evidences or reflects, or is any way related or connected to, the solicitation by Defendants of customers or employees of Newsco.

83.    It is essential that the Court act immediately because to do so otherwise would risk irreparable injury to Newsco with no adequate remedy at law.  Further, Defendants' on-going conduct threatens Newsco, and, therefore, relief cannot wait until a full injunction hearing can be had.

84.    The benefit of injunctive relief to Newsco far outweighs any detriment to the Defendants and serves the public interest.  Newsco merely seeks to regain the status quo and to enjoin further and continued unlawful conduct by Defendants.

85.    Newsco is entitled to injunctive relief for the actual, continuing, or threatened misappropriation and use of its Confidential Information and unlawful solicitation and interference by LaRue with such injunctive relief beginning on the date of judgment.  LaRue's misappropriation and other wrongful conduct will most likely continue to cause harm to Newsco in the future for which there is no adequate remedy at law unless Skyline is permanently enjoined from any further acts of misappropriation of Newsco's Confidential Information.  Accordingly, permanent injunctive relief is appropriate in this case against Skyline.

86.    To the best of the undersigned counsel's knowledge the parties against whom relief is sought are not represented by counsel in the matter made the basis of the relief sought.

87.    For the reasons stated herein, Newsco requests that a preliminary injunction be entered against the Defendants, and that after the temporary restraining order and a preliminary

injunction hearing, the Court enjoin the Defendants from undertaking the conduct described herein and that a permanent injunction be entered upon the trial of this matter against Skyline.

## PRAYER

Newsco International Energy Services USA Inc. seeks the following relief:

(a)     A Temporary Restraining Order be issued against Defendants (and anyone acting on their behalf or at their direction) ordering Defendants (and anyone acting on their behalf or at their direction) as set forth above;

(b)     Defendants be ordered to appear at a Preliminary Injunction hearing and upon such hearing, a Preliminary Injunction be issued enjoining Defendants from the conduct set forth above;

(c)     Actual, exemplary and punitive damages as set forth above;

(d)     Reasonable attorneys' fees, costs, and expenses incurred in the bringing of this action;

(e)     Pre-judgment and post-judgment interest as allowed by law; and

(f)     Such other and equitable relief as may be appropriate in said circumstances.

Respectfully submitted,

*/s/ Stephen A. Roberts*
**STEPHEN A. ROBERTS** (SBN 17019200)
sroberts@clarkhill.com
CLARK HILL STRASBURGER
720 Brazos, Suite 700
Austin, TX 78701
(512) 499-3624

**HERBERT J. GILLES** (SBN 07925350)
hgilles@clarkhill.com
**ANDREW G. EDSON** (SBN 24076364)
aedson@clarkhill.com
CLARK HILL STRASBURGER
901 Main Street, Suite 6000
Dallas, TX 75202
(214) 651-2167

ATTORNEYS FOR PLAINTIFFs